UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————x

In re:  RICHARD and KARA HARTLEY,    :
    :
    Debtors.    :
    :
—————————————————————
    :      **OPINION AND ORDER**

RICHARD HARTLEY and KARA HARTLEY,    :      11 Civ. 9692 (ER)
    :
    Appellants,    :
    :
    -against-    :
    :
JENNIFER ESPOSITO,    :
    :
    Appellee.    :

————————————————————x

Appearances:

Lewis D. Wrobel, Esq.
210 South Avenue
Poughkeepsie, New York
*Attorney for Appellants Richard and Kara Hartley*

Stuart Kossar, Esq.
Drake Loeb Heller Kennedy Gogerty Gaba & Rodd
555 Hudson Valley Avenue, Ste. 100
New Windsor, New York
*Attorney for Appellee Jennifer Esposito*

Ramos, D.J.:

      Richard and Kara Hartley (the "Hartleys" or "Appellants") appeal the Order of the Bankruptcy Court granting summary judgment in favor of Appellee Jennifer Esposito ("Ms. Esposito").  In the adversary proceeding below, Ms. Esposito sought to except from discharge in Appellants' personal bankruptcy petition a judgment she obtained against the defendants' business, Hartley's Catering, Inc. ("Hartley's Catering").  For the reasons set forth below, the judgment of the Bankruptcy Court is AFFIRMED.

## I.      Background

Ms. Esposito is a former employee of Hartley's Catering.  The underlying bankruptcy court adversary proceeding involved her efforts to collect a judgment she obtained in New York state court in the amount of $352,400.80 against her former employer and a co-worker.  The parties do not dispute the facts giving rise to the state court action; they are discussed here only to the extent relevant to the resolution of this appeal.

Appellants Mr. and Mrs. Hartley were the sole shareholders of Hartley's Catering from January 2004 to September 2009.  (Bankr. Doc. 13 ¶ 2.)[1]  The business, located in New Windsor, New York was a delicatessen commonly known as Schlesinger's Deli Depot.  (*Id*. ¶ 3.)  Ms. Esposito began working there as a deli clerk in November 2005.  (*Id*. ¶ 4.)  Approximately one year later, in November 2006, Ms. Esposito began to be subjected to severe sexual intimidation and harassment, including sexual and physical assaults, by one of her co-workers.  (*Id*. ¶¶ 15-19, 21-25.)  Ms. Esposito complained to Mrs. Hartley about the intimidation and assaults, but she was dismissive of her complaints and never investigated or disciplined the co-worker.  (*Id*. ¶¶ 26-32.)  Mrs. Hartley advised Mr. Hartley of Ms. Esposito's complaints, but he did not investigate or discipline the co-worker, either.  (*Id*. ¶ 32.)  On January 16, 2007, the continuing harassment prompted Ms. Esposito to give two-week's notice of her resignation, but she was fired two days later.  (*Id*. ¶¶ 32-34.)

On February 16, 2007, Ms. Esposito filed a verified complaint with the New York State Division of Human Rights (the "Division") charging Hartley's Catering and the co-worker with employment discrimination based on multiple instances of physical and sexual abuse.  (*Id*. ¶¶ 43-

---

[1] "Bankr. Doc." refers to documents filed in the Bankruptcy Court for the Southern District of New York under docket number 10-9055 (CGM).

44.)   On February 21, 2008, after a public hearing, the Division issued a final order ruling in favor of Ms. Esposito and awarding her $300,000 in damages.  (*Id*. ¶ 50.)

On April 16, 2008, Hartley's Catering commenced an Article 78 proceeding to annul the Division's final order.  (*Id*. ¶ 51.)   That proceeding was transferred to the New York State Supreme Court, Appellate Division, Second Department, on May 28, 2008.   (*Id*. ¶ 54.)   On October 27, 2009, the Appellate Division affirmed the final order and directed the defendants to pay Ms. Esposito the principal sum of $300,000 plus interest.  (*Id*. ¶ 57.)   On January 19, 2010, approximately three full years after she commenced her action, that judgment was entered in New York Supreme Court, Orange County, against Hartley's Catering and the co-worker, jointly and severally, in the amount of $352,400.80.   (*Id*. ¶ 58.)

It was only *after* the final entry of judgment in Orange County Supreme Court, while she was taking steps to enforce her judgment, that Ms. Esposito learned of two actions Appellants had taken since she first successfully petitioned the Division of Human Rights:  (1) on July 31, 2008, approximately five months after the Division's final order, the Appellants dissolved Hartley's Catering[2] (*id*. ¶ 60); and (2) on October 9, 2009, the Appellants filed for personal bankruptcy protection. (*Id*. ¶ 55.)  Both of these actions were without notice to Ms. Esposito.

Ms. Esposito thereafter commenced the adversary proceeding against the Hartleys below. In her complaint, she alleged that the Hartleys purposely withheld the fact of the dissolution of the business from her, and thereafter continued to operate the business to prevent her from learning of the dissolution.  (Bankr. Docs. 1 ¶¶ 17-18, 14 at 9-10.)  At his deposition, Mr. Hartley admitted that he was aware that at the time he dissolved the business the Division had already ruled in favor of Ms. Esposito, and that the judgment was a factor in the decision to dissolve:

---

[2] Notwithstanding the fact that the business was dissolved, the Hartley's continued to run the delicatessen for over one year, until September 2009.  (Bankr. Docs. 13 ¶ 64, 26 at 2 (Mem. Decision Granting Pl.'s Mot. for Summ. J.)).

Q:      So in or about July 2008 was when the corporation was dissolved?

A:      Yes.

Q:      As you had already told me when you decided to dissolve the corporation, you were aware of the State Division of Human Rights' findings against Hartley Catering, correct?

A:      Yes.

Q:      And just so I get it right, from the time the corporation was dissolved in July 2008 until September 2009 continued to operate the business [sic]?

A:      Yes.

(Bankr. Doc. 14 at 10-11.)

Ms. Esposito argues that the Hartleys, as the sole shareholders of the business, became personally jointly and severally liable to her by operation of New York law because they purposely failed to give her notice of the dissolution.  (*Id.* at 12.)  As a result, the Hartleys were required to schedule their indebtedness to her in the bankruptcy petition and provide her with notice of the filing (*id*. p. 11), which they admittedly did not do.  (Bankr. Docs. 13 ¶¶ 55-56, 24 ¶¶ 55-56.)   Accordingly, she concludes, the Hartleys cannot discharge her judgment in bankruptcy.

The Hartleys do not dispute that they did not provide Ms. Esposito with notice of either the dissolution or the bankruptcy filing.  They argued below, however, that they had no duty to do so because—as regards the dissolution—they were not required to provide notice to creditors under applicable New York law, and—as regards the bankruptcy filing—Ms. Esposito was not a creditor of *Mr. and Mrs. Hartley* (as opposed to their business) and therefore was not entitled to notice.  (Bankr. Doc. 25 at 3-4.)

Ms. Esposito moved for summary judgment on her claims in the bankruptcy court.  In its Memorandum Decision Granting Plaintiff's Motion for Summary Judgment (Bankr. Doc. 26),

the bankruptcy court found that the Hartleys intentionally and fraudulently concealed the fact of the dissolution from Ms. Esposito and therefore the state court judgment was not dischargeable under section 523(a)(2)(A) of the Bankruptcy Code, (*id.* at 1-2), which excepts from discharge any debt "for money property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud."   11 U.S.C. § 523(a)(2)(A).   Building on that determination, the bankruptcy court found that the Hartleys were therefore required to list the judgment in their bankruptcy petition and provide notice to Ms. Esposito.   Their failure to do so resulted in a violation of section 523(a)(3) of the Bankruptcy Code, which excepts from discharge any debt known to a debtor but not listed.   11 U.S.C. § 523(a)(3).   In so concluding, the bankruptcy court made the following findings of fact:

> Here, the defendants gave verbal notice to some of the corporation's creditors, such as its landlord and mortgagees and *dissolved their corporation in secrecy to those creditors who they did not see fit to pay*. . . .   Any attempt by the plaintiff to enforce her judgment against the corporation at this time would prove impossible. The corporate assets were distributed to other creditors and to the defendants, years ago.

> . . .

> Despite Mr. Hartley, as President of the corporation, signing and filing the certificate of dissolution on July 31, 2008 and New York law prohibiting a dissolved corporation from engaging in new business, the Hartleys continued to operate the deli until September 2009 and never notified plaintiff of the dissolution.   The Hartleys *actively concealed the corporation's dissolution from plaintiff as well as from the state court* by filing and litigating an appeal of plaintiff's award from May of 2008 until October 2009 in the New York State Appellate Division.   At no time during the appellate process, did the Hartleys inform the court or the plaintiff of a critical fact regarding a party to the lawsuit: Hartley's Catering no longer existed.

> . . .

> The Hartleys *intended to deceive the plaintiff* by secretly dissolving the corporation without providing her with notice of the dissolution; continuing to operate their business in violation of state law; and continuing to actively pursue appellate litigation against the plaintiff in the name of their dissolved corporation.

(Bankr. Doc. 26 pp. 7, 9, 10 (citations omitted, emphasis added).)

The bankruptcy court concluded that the Hartleys could not discharge Ms. Esposito's judgment in bankruptcy. The Hartleys timely filed a notice of appeal on November 30, 2011.

## II.   Discussion

### A.  Standard of Review

This Court has jurisdiction to hear appeals from decisions of a bankruptcy court pursuant to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . . [and,] with leave of court, from other interlocutory orders and decrees . . . of bankruptcy judges." 28 U.S.C. § 158(a). A district court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *Overbaugh v. Household Bank, N.A. (In re Overbaugh),* 559 F.3d 125, 129 (2d Cir. 2009); see Fed. R. Bankr. P. 8013 (a district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree," and "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous").

### B.   The Hartleys are Jointly and Severally Liable to Ms. Esposito

Under New York law, "[t]he dissolution of a corporation shall not affect any remedy available to or against such corporation, its directors, officers or shareholders for any right or claim existing or any liability incurred before such dissolution." N.Y. Bus. Corp. Law § 1006(b). Accordingly, a corporation no longer in existence remains responsible for its liabilities "until its affairs are fully adjusted." *Rodgers v. Logan*, 121 A.D. 2d 250, 253, 503 N.Y.S.2d 36, 39 (1st Dep't 1986) (citing cases).

However, while commencing an action against a corporation remains an option notwithstanding its dissolution, suing the corporation itself is not an injured party's only

6

recourse. *Id.* Contrary to Appellants' assertion, New York law is clear that "shareholders can be held liable for claims against dissolved corporations." *New York v. Longboat, Inc.*, 140 F. Supp. 2d 174, 177 (N.D.N.Y. 2001). For example, and as relevant to the instant case, shareholders who received distributions of assets from a corporation could be liable for claims against the dissolved corporation. *Hatch v. Morosco Holding Co.,* 50 F.2d 138, 140 (2d Cir. 1931); *see also Wells v. Ronning*, 269 A.D.2d 690, 692, 702 N.Y.S.2d 718, 721 (2000) ("After dissolution, shareholders who have received distribution of remaining assets of the corporation hold these assets in trust for the benefit of creditors."). And, "where it is impossible or futile to obtain [a] judgment [against a defunct corporation], the creditor can maintain an action directly against the directors or shareholders." *Rodgers,* 121 A.D. 2d at 253, 503 N.Y.S.2d at 39; *see also Flute, Inc. v. Rubel,* 682 F. Supp. 184, 187 (S.D.N.Y. 1988) (same); *Damato v. Wallbank Realty Corp.,* 33 Misc. 2d 993, 995, 230 N.Y.S.2d 275, 278 (Sup. Ct. 1962) (plaintiff may avoid the futility of first proceeding against a dissolved corporation by joining individual officers and directors to whom assets have been distributed).

Thus, while Appellants are certainly correct that they were not required by New York Business Corporation Law to provide notice to all of its creditors upon dissolution, *see* N.Y. Bus. Corp. Law § 1007(a) ("[a]t any time after dissolution, the corporation *may* give a notice requiring all creditors . . . to present their claims in writing") (emphasis added), by opting to give notice to some creditors but not others, Appellants put themselves at risk for being held liable for the obligations of their dissolved company. *See Parent v. Amity Autoworld, Ltd.*, 15 Misc. 3d 633, 640, 832 N.Y.S.2d 775 (Dist. Ct. 2007).

In *Parent*, the court construed the language of § 1007 and noted:

[T]he use of the language "may give notice" to creditors in section 1007 is permissive in nature. As such, it appears that New York law allows for corporations to informally dissolve by transferring all their assets without giving

notice to creditors.  However, in the absence of an alternative provision like the Bulk Sales Law, the cost of an informal dissolution is that directors cannot shield themselves against corporate creditor liability.  Directors who undertake to divest a corporation of all its property without taking the proceedings for a voluntary dissolution do so at their peril.

*Id.*

The court then went on to explain that authority construing a predecessor statute to the current Business Corporation Law, "was unequivocal in its determination that it is 'the neglect to afford [creditors an] opportunity [for court review of their claims that] constitute[s] a violation of the director's duties, and it matters not that they may have supposed they were not required to do any more than they did for the protection of creditors.'"  *Id.*

Here, the bankruptcy court determined that the Hartleys:  (1) dissolved their corporation in secrecy after the Division of Human Rights issued its final judgment in favor of Ms. Esposito; (2) intended to defraud Ms. Esposito; and (3) actively concealed the dissolution from Ms. Esposito and the state court.  Thus, by their actions, the Hartleys rendered any recovery by Ms. Esposito against the corporation futile, as the "corporate assets were distributed to other creditors and to the defendants, years ago."  (Bankr. Doc. 26 at 7.)  The lesson of *Parent* is clear—by opting to give notice to some creditors but not others, the Hartleys put themselves at risk for being held liable for the obligations of their dissolved company.  The Court finds that on these facts, the bankruptcy court correctly determined that Ms. Esposito was entitled to summary judgment on her claim that the Hartleys are jointly and severally liable for the debts of Hartley's Catering.

### C.  The Debt is Excepted from Discharge under 11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge debts for, among other things, money, property or services obtained by fraud or fraudulent misrepresentations.  In order to prevail on an argument of fraud for purposes of § 523(a)(2)(A), a creditor must show by a preponderance of

evidence that:  (1) the debtor made a false misrepresentation; (2) knowing it was false; (3) with the intent to deceive; (4) the creditor justifiably relied on the misrepresentation; and (5) the creditor sustained a loss that was proximately caused by the misrepresentation.  *In re Iulo*, 421 B.R. 49, 54 (Bankr. S.D.N.Y. 2009).

Appellants challenge the bankruptcy court's determination that the Hartleys defrauded Ms. Esposito by dissolving their business without notice to her, and thereafter actively concealing that fact from her by continuing to operate the business.  Specifically, they assert that "there was no act of concealment of the dissolution," that they "had no intention to deceive Ms. Esposito and the record shows no such intentional deception," that Ms. Esposito has not "sustained any loss," and that it "cannot be determined" what if any reliance Ms. Esposito placed on the continued operation of the business while the litigation was progressing.  (Appellants' Br. at 10.)

On appeal, a district court reviews a bankruptcy court's findings of fact for clear error.  *In re Overbaugh*, 559 F.3d at 129.  The bankruptcy court found on the record before it that the Hartleys created the false impression that the corporation was a going concern by continuing to operate the business, in violation of law, after its dissolution and by actively pursuing appellate litigation in the name of the defunct corporation.  This factual showing is plainly sufficient to satisfy the first two elements of a cause of action for fraud under 11 U.S.C. § 523(a)(2)(A).  *See In re Khafaga,* 419 B.R. 539, 545 (Bankr. E.D.N.Y. 2009) (conscious deception and concealment of material information may constitute false pretenses under § 523(a)(2)(A)); *Farraj v. Soliz (In re Soliz)*, 201 B.R. 363, 369 (Bankr. S.D.N.Y. 1996) (same); *Sandak v. Dobrayel (In re Dobrayel)*, 287 B.R. 3, 12 (Bankr. S.D.N.Y. 2002) (same).  "As distinguished from false representation, which is an express misrepresentation[,] false pretense involves an implied

misrepresentation or conduct intended to create and foster a false impression." *Minority Equity Capital Corp. v. Weinstein (In re Weinstein)*, 31 B.R. 804, 809 (Bankr. E.D.N.Y. 1983). "'[O]missions or a failure to disclose on the part of the debtor can constitute misrepresentations for purposes of nondischargeability where circumstances of the case are such that omissions or failure to disclose create a false impression which is known by the debtor.'" *In re Soliz*, 201 B.R. at 369 (collecting cases).

Appellants do not dispute that they did not provide notice of the dissolution to Ms. Esposito, but argue that no intent to deceive can be discerned from that fact. There is substantial unanimity of view that intent to deceive is an issue of fact. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Bonnanzio (In re Bonnanzio)*, 91 F.3d 296, 302 (2d Cir. 1996) (collecting cases). Intent to deceive can be inferred from the totality of circumstances. *Id.* at 301; *see also Ins. Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1118-19 (3d Cir. 1995) (same). Here, the totality of the circumstances provided the bankruptcy court with ample information from which to conclude that the Hartleys' intended to deceive Ms. Esposito. The bankruptcy court noted, for example, that the dissolution did not occur in a vacuum, but rather in the wake—and largely because—of the adverse judgment of the Division of Human Rights. Moreover, the court reasonably concluded that the Hartleys intended specifically to harm Ms. Esposito's interests by providing notice of the dissolution to preferred creditors—who promptly made efforts to secure their rights—but not to her.

By their continuing deception, the Hartleys also frustrated Ms. Esposito's ability to collect on her judgment by inducing her reliance on the continued viability of the corporation; thereby effectively preventing Ms. Esposito from presenting a claim. In any event, to prevail on a § 523(a)(2)(A) claim, a plaintiff is not required to prove actual reliance. It is sufficient "that

the false statement is one that is capable of influencing, or had a natural tendency to influence, a creditor's decision." *In re Cohn*, 54 F.3d at 1115.

Finally, as Appellants concede, there is nothing left of the corporation. (Appellants' Br. at 10.) Ms. Esposito has therefore sustained a loss as a result of Appellants' deception because she was prevented from presenting a timely claim.

The foregoing findings by the bankruptcy court are not clearly erroneous and will not be disturbed.

### D. Ms. Esposito Was Entitled to Notice of the Bankruptcy Proceeding

Pursuant to 11 U.S.C. § Section 523(a)(3), a debt is not discharged if it is not listed or scheduled in a debtor's bankruptcy petition and notice is not given to the creditor, if known. Here, as discussed above, the Hartleys knew that they were jointly and severally liable to Ms. Esposito. However, they failed to schedule their liability to Ms. Esposito in their bankruptcy petition or to provide her with notice of their filing. Accordingly, the debt is not dischargeable on this basis as well.

### E. The Bankruptcy Court Did Not Find Liability Pursuant to § 523(a)(4)

Appellants correctly note that the bankruptcy court did not determine that the debt owed to Ms. Esposito is non-dischargeable by virtue of § 523(a)(4) of the Bankruptcy Code. That section states that a debt may be excepted from discharge "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The bankruptcy court noted that in the instant case, "the 'trust' relationship was formed after dissolution of the corporation and concurrent to the [Appellants'] liability to [Appellee]." (Bankr. Doc. 26 at 12.) Accordingly, § 523(a)(4) was not applicable. *See Owens v. Owens*, 155 Fed. App'x. 42 (2d Cir

2005) (the relationship required under § 523(a)(4) must have existed before the act that created the debt).

## III.     Conclusion

For the reasons set forth above, the order and judgment of the Bankruptcy Court, dated November 16, 2011, is AFFIRMED.  The Clerk of the Court is respectfully directed to docket this decision and close the case.

It is SO ORDERED.

Dated:     September 26, 2012
           White Plains, New York

_____
Edgardo Ramos, U.S.D.J.